And we will call case number 8, 152862, United States v. Crane Marks. Oh, there you are. Mr. Stevenson, you've just popped up. Good afternoon, Your Honors. May it please the Court, Adam Stevenson on behalf of the appellant Crane Marks. The question in this case revolves around three prior convictions, three or four, in fact, that would potentially qualify, or in the district court's opinion, qualified Mr. Marks for the career offender designation under the United States sentencing guidelines. And it's appellant's position that the district court either used the improper standard in addressing whether those convictions fell within the applicable time frame or misapplied the standard as given to Mr. Marks. Now, has Mr. Marks ever stated that his parole was not revoked for any of those convictions? Yes, Your Honor. In fact, at the beginning of the sentencing hearing, that was the argument of counsel, that there was not any recollection of revocations. Recollection. Correct. Recollection. But he never said, under no circumstances, was I, did this ever happen. He may not have phrased it as such, Your Honor. This is actually similar to a situation with regard to Marino Padilla, which the government cites and discusses how, essentially, that in Marino Padilla, there were sort of barefaced assertions that, well, the PSR was simply wrong. There was not a violation. I did not have a parole violation, and therefore, they should not qualify. The situation in that case was there were no underlying documents or records in the record to essentially prove up the PSR. It was that barefaced denial. In Mr. Mark's case, however, there were Illinois Department of Corrections records for each of the three convictions, the 94, 95, and 96 offenses, all of which are on the appendix and were made a part of the PSR. And actually, despite the government's contention, they were all featured prominently at the sentencing hearing, where the district court reviewed them in great detail. Because, in fact, the PSR writer indicated that the narratives of each of those three offenses came from those documents. And the 94 and 95 offenses simply do not include any type of return during this relevant time period. It was up until the start of the federal offense being 1998, October 1, 98, which was 15 years prior to the federal offense. There simply was no mention of any return. So those two offenses, for some sort of statement about a violation and a return to custody and the reserving of a sentence there, simply is incorrect. With regard to the third offense, the 1996 offense, there is a notation about a, quote, parole violator return. But there isn't an indication of any sort of revocation or any sort of reconfinement sentence or anything of the sort. No adjudicative documents that were made a part of the record. So unlike in Marino Padilla, where simply it was the defendant at the last minute saying, well, the PSR is simply untrue. I was not revoked without any sort of documentation. The arguments of trial counsel on behalf of Mr. Marks were based, in part, upon these IDOC records. And that's what differentiates Mr. Marks' case from Marino Padilla. Mr. Stephenson? Yes. We know that the sentencing guidelines are full of all sorts of arbitrary lines, especially with respect to criminal history. Is there any sign in the record that either side suggested to the district judge that maybe the sentence shouldn't really depend on the answer to this question, and she ought to just use her judgment on the 3553A, however the guideline question might be resolved? Well, interestingly enough, the parties actually prior to the formation of the PSR were under the agreement, and it's noted in the PSR, that the career offender designation would not have been appropriate. It was only after the PSR that the government then sided with that agreement. And there was actually, the sentence is not within the career offender designation guidelines. However, it is above what would otherwise apply had the sentencing been under that other guideline. So it's above, if the career offender guideline does not apply, in essence, it's as if, when you're doing the score, it's as if these prior crimes and escapes never happened, right? The score would be the same. The criminal history score would be the same. The offense level would be significantly reduced. Yeah, sorry. But it would be difficult for the sentencing judge to just forget about all that, right? So I'm wondering whether she didn't just, in essence, split the difference pretty reasonably here with the sentence that she gave. Well, respectfully, Your Honor, if that was, in fact, the district court's intention, I don't believe that was clear on the record. There was not an explicit statement to that effect. And secondly, I think, when starting off with the guidelines and having to calculate the proper guidelines, whether it's under Pew or the Supreme Court's other guidance with regard to plain error by the miscalculation of an improper guidelines range forming the starting point of the sentence, I think in either situation, again, short of that explicit statement of, regardless of the end result of this decision here, that would be my sentence, I think that a remand for resentencing is the appropriate remedy here. And frankly, to sort of back up to the question of the legal standard here, the district court appeared to essentially agree that it was just merely custody that was required. As long as Mr. Marks was, quote unquote, in custody, that that was sufficient to trigger the 15-year period of time. But instead, it is a twofold inquiry of a revocation and resulting confinement. In Mr. Marks' situation, there was a 2,000 offense that formed an independent basis of IDOC custody, which did form a basis for custody. So mere custody would not have been sufficient in this case. There was that necessary finding of both of those inquiries, the revocation as well as the resulting re-confinement, which frankly just is not here. Again, the 94, 95 offenses from the IDOC records simply indicate no return during the relevant time period. The 96 offense does include, quote, a parole violator return. But there's not that indication of a revocation and resulting in re-confinement or calculation. And obviously, one question might be, well, what would have been necessary here? Some sort of adjudicative document from the parole commission, some sort of recalculation of what the confinement sentence would have been, time left to serve, a waiver, frankly, of a hearing, if Mr. Marks so chose. Do you think the judge understood that she was applying for B1.1 or the factual determinations necessary to apply that guideline? I believe she understood for B1.1. But frankly, there's an interplay of several guidelines here that I think there was confusion about. That being 4A1.2E1, which talks about the 15-year window during any part an individual's incarcerated, as well as 4A1.2K2A, which talks about revocations and sentences of imprisonment bringing sentences within that relevant time period. And I think there was confusion with regard to the factual findings there. I think that's what led to the misapplication of the legal standard here, where it was simply custody instead of resulting incarceration. Do you think she appreciated the inherent unreliability of the pre-sentence report, even after the probation officer testified that she asked the IDOC, that IDOC records officer, only whether Marks was in custody in 2000, not whether he was incarcerated for a parole violation? I do not believe that the district court understood that distinction. And I think that's in part because the court essentially said, well, parole is a part of a sentence. Custody is enough. And that's all that was necessary. So I believe that was a misapplication of the standard and potentially a misunderstanding of the factual findings necessary. All right. Thank you. Thank you, Your Honors. OK. Ms. Pillay. Good afternoon. May it please the court. Shelba Pillay for the United States. I'm going to start you right off, because parole revocation seems to be the type of fact that is easily confirmed. But there appears to be no document in the record establishing that revocation. And given the severe impact on the sentencing range, don't you think we should remand so that we can obtain that sort of confirmation? Frankly, Your Honor, the probation officer made clear, both in the PSR and in the hearing, that there were efforts to find the relevant documents, but that he relied primarily on the IDOC verification documents to show the pattern of the defendant's custody with respect to each case. And I think that's an important part. I don't necessarily agree that the IDOC verifications are inherently unreliable. They're, in fact, verified documents from the organization that is primarily responsible for the movement of that defendant. And each document is relevant to each case. They don't overlap. And I think it's important to note that we'll just start with the 1996 conviction. If you look at the information contained, it walks through when the defendant was convicted, when he arrived at the IDOC, the fact that he, which was in, for the 1996 conviction, he escaped and was returned on July 26, 1996. And then he was paroled out in July 26, 1998. But then he, while he was out. Sorry, you said escaped July 26, 1996? I'm sorry, the escape return. He was returned from an escape probably from a prior. Wait a minute. I'll just be more specific to the 1996. You're right, Your Honor. That was with respect to the 94. I thought we were talking about 96. We are, Your Honor. So he is admitted in on the 96 conviction on July 26, 1996. He's paroled out on June 26, 1998. He then, again, sells crack, this time to an undercover police officer in Chicago, gets convicted after pleading, is  Just stop for a minute. Because the district court concluded that the 1996 conviction counted without making a finding of whether he was re-imprisoned for a parole revocation. What she said was, parole itself is part of the sentence. And that statement went uncorrected despite the probation officer's attempt to clarify the point for the judge. I think that part's correct. In that moment, Your Honor, I think we turned a corner in discussing the timeliness of the convictions rather than the fact of the revocation. But I come back to the point that the violator information from IDOC is very clear, is the fact that he's returned as to a violation in 2000 as a result of the 2000 conviction. I'll also point out that the district court states Here's my problem, OK? I'm sorry. But the court never clarified whether Marks was re-imprisoned or merely on parole, nor did it ever ask for any verification that Marks' parole on any of the 1990s, all those convictions, was revoked. There was confusion there. And that confusion would, to my mind, undermine confidence in the application of the sentencing guidelines. Your Honor, where I disagree is that because the district court walked through all of the dates for each of these convictions, by doing that, she's acknowledging where the defendant is. Is he in custody or is he not in custody? And the fact that he's returned to custody, and the fact that his discharge dates are well after the time frame that he would have had to serve on those dates for those convictions. For example, the 1990s. Your brief concedes that the focus during the hearing was on the timeliness of the convictions, not whether there was a revocation. And I never saw the court make any explicit factual finding that Marks' parole for any of these convictions had been revoked. And to me, at any rate, that's the crux of the appeal. I think she was focusing on, the district court, rather, was focusing on relying on the PSR's inferences and conclusions based on these verifications of incarceration. And so moved on to whether or not he was in custody within the 15 years, and was not questioning whether or not he was revoked. Because just the pattern of his movement in and out of custody was supporting the conclusion that he was revoked. Otherwise, he was serving. There was an independent basis for his being in custody, right? The 2000 conviction. Being in prison. Custody is, for purposes of this appeal, a quite ambiguous term. And I think that's right, Your Honor, which is why it's really important to focus on the fact that each verification of incarceration shows where he was on that case. And his discharge on the 94-95 case wasn't until May 22, 2000. So that's two additional years he's serving on a three-year sentence. Ms. Pillay, let me ask you, do you recall anybody suggesting to the district judge that this really shouldn't matter very much in any rational sentencing decision? No, Your Honor. I think in part because he has four potentially qualifying convictions. And the 2000 conviction was not disputed. The 1996 conviction, based on the records, is not seriously disputable. So that was the underlying argument for why he was properly designated as a co-offender. But the court still went well below the guidelines, in large part because of the remainder of the arguments that were presented. Explain to me why a sensible sentence in this case should depend upon whether there is a piece of paper that unambiguously indicates that the 1996 parole was revoked. I tend to agree with you, Your Honor, because I think the burden on the probation office in the district court is so extensive with records this complicated. And in fact, the defendant's only objection was that he doesn't remember. The IDOC verifications of our incarceration were part of the record from the probation office, not offered by the defendant. He provided no additional information to refute what the probation officer concluded from his investigation through his efforts to understand the defendant's criminal history. That should be enough for the district court to rely on. And for the district court to rely on those records put together with the defendant's criminal history and the probation officer's reasonable inferences as to the status of the defendant's history. I completely agree with Your Honor to require that the probation office in the district court track down every piece of paper for a defendant with this type of criminal history. So why don't you suggest to district judges facing such an issue that maybe it shouldn't matter? I will take that under advisement, Your Honor. Thank you. Hear that over there? And so I continue on my position, particularly with respect to the 1996 conviction. It really isn't disputable. And the district court had properly relied on the information contained in the PSR. And frankly, a conclusion that there were not parole revocations isn't rational under the way these records come together. The fact that there wasn't a specific piece of paper showing that he, in Cook County State Court, had been revoked shouldn't be the crux of this question. The probation officer should be able to provide the information based on his investigation and his conclusions. If the defendant disagrees, he has the right to provide founded, supporting, corroborating evidence for his position. He did not do that. He simply said, I don't remember there being a hearing. But notably, as with most state court proceedings, those revocations would have happened at the same time as his sentencing on the new conviction. Because every single time this defendant has been released on parole or has escaped his electronic monitoring, he sold drugs again. So he was going back. So the reality of it is, maybe his memory wasn't strong because he was in court so many times on the same issue. But at the end of the day, the records do support the fact that he had, at the very least, two qualifying convictions, if not all four. And accordingly, the government does ask that that sentence be affirmed. Thank you. Hey, Mr. Stephens. Thank you, Your Honor. Just a brief point. And I think this is important in a situation like this. And this was addressed in Marino Padilla. In a situation such as this, unlike in many other cases, we're attempting to prove that a revocation did not occur. We are attempting to prove a negative. And that was one of the things that the court was concerned about in Marino Padilla. Counsel for the government asked that, well, defense counsel could have brought up all sorts of records. Frankly, no, we couldn't have. There were the IDOC records that were about the extent of what we might have. We were proving that a revocation would not have occurred. So the argument about a defense burden proving something that simply could not be proven is, frankly, fairly difficult. One other thing, I think, as well, was a couple of clarifications. One, the IDOC records noted a discharge. Whether he was on supervision, parole, or in custody as a result of a reconfinement sentence, that still would have resulted in a, quote unquote, discharge. Discharge is not a unique term as it relates to the end of an incarceration sentence. Frankly, release would be the more appropriate term, in my opinion. So we don't know whether discharge means out of prison or off parole? It is not directly apparent from the IDOC records. And it appears that the PSR uses it for the end of both. It is the end of the sentence, whether that was served through confinement or through supervision while in confinement for the 2000 offense. And last but not least, there's several references to dates in and out, and in and out. Frankly, there's only one date that is important. That's the October 1st, 1998 date, and whether he was incarcerated pursuant to a reconfinement sentence as of that date. And again, based upon the documents, in addition to the PSR that form the basis of the PSR, the only definitive documents, frankly, that we could have in a situation like this, there is not that required revocation to bring the sentence within. And lastly, to Judge Hamilton's point, I would agree that I think there could have been a broader sentencing discussion here about what would have been the appropriate sentence under 3553. But once it was determined that he was a career offender, the government immediately said a recommendation at the bottom of the guidelines range was appropriate in light of that designation. So frankly, I think that the guidelines range here was extremely important and requires remand for resentencing with the correct range. Thank you. Thank you, Mr. Stevenson. Thank you. You were appointed by the court. And we are very grateful for your help. And are Ms. Fares and Mr. Del Campo here? They have graduated and have long since left the desk. They have. Well, should you ever be in contact with them again, thank them for their help. I will also. Thank you. And thank you, government, always.